**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**MATTHEW WILLIAMS,**<br><br>**Defendant.** | **Case No. 15-20034-01-CM** |

**MEMORANDUM AND ORDER**

This matter comes before the court on defendant Matthew Williams's Motion for Judgment of Acquittal (Doc. 41). On August 26, 2015, a jury convicted defendant of both counts against him, bank fraud and aggravated identity theft. The evidence at trial showed defendant submitted a mortgage application to Pulaski Bank using his father's identity and social security number in order to secure a U.S. Department of Veterans Affairs (VA) backed loan for more than $400,000. Defendant provided additional documentation to the bank, including a falsified pay stub and a notice of intent to proceed with the loan, as part of the loan application process. Defendant argues he is entitled to a judgment of acquittal under Federal Rule of Criminal Procedures 29 because the government failed to produce evidence to establish two elements of bank fraud: risk of loss and materiality. He further claims the aggravated identity theft charge is predicated on the bank fraud charge, and therefore an acquittal on the bank fraud charge necessarily requires acquittal on the aggravated identity theft charge. For the following reasons, the court denies the motion.

## I. Standard

Under Federal Rule of Criminal Procedure 29(c)(2), if a jury has returned a guilty verdict, "the court may set aside the verdict and enter an acquittal." When deciding whether to grant a motion for

acquittal, a court must "view the evidence in the light most favorable to the government and then determine whether there is sufficient evidence from which a jury might properly find the accused guilty beyond a reasonable doubt." *United States v. White*, 673 F.2d 299, 301 (10th Cir. 1982). In doing this, the court may not consider the weight of the evidence or the credibility of witnesses. *Burks v. United States*, 437 U.S. 1, 16 (1978). Acquittal is not proper if a court determines, after considering all of the evidence, that the government has established each element of the crime. *White*, 673 F.2d at 301; *see also United States v. Johnson*, 42 F.3d 1312, 1319 (10th Cir. 1994) (noting that evidence supporting the conviction "must be substantial and must not raise a mere suspicion of guilt."). If the government has sufficiently established each element of the crime, the court must defer to the jury's guilty verdict. *See White*, 673 F.2d at 302 (noting, "[t]his standard reflects a deep respect for the fact-finding function of the jury.").

**II. Discussion**

Defendant argues he is entitled to a judgment of acquittal because there is insufficient evidence to establish two elements of bank fraud: risk of loss and materiality. Defendant was charged under subsection 1 of 18 U.S.C. § 1344, which makes it illegal to "knowingly execute[], or attempt[] to execute, a scheme or artifice -- (1) to defraud a financial institution." Courts have construed the bank fraud statute liberally in order to preserve the integrity of the federal banking system. *See United States v. Rackey*, 986 F.2d 1357, 1361 (10th Cir. 1993); *United States v. Young*, 952 F.2d 1252, 1255 (10th Cir. 1991).

In order to convict defendant of bank fraud under subsection 1 of 18 U.S.C. § 1344, the government must prove: (1) that defendant knowingly executed or attempted to execute a scheme or artifice to defraud a financial institution; (2) that defendant did so with the intent to defraud the financial institution; and (3) that the financial institution was federally insured. *United States v.*

*Swanson*, 360 F.3d 1155, 1161 (10th Cir. 2004). The jury here was instructed using the Tenth Circuit pattern jury instructions, which include additional elements the government must prove beyond a reasonable doubt. The jury was instructed as follows:

INSTRUCTION NO. 9

> The defendant is charged in Count 1 with a violation of 18 U.S.C. Section 1344. This law makes it a crime to execute or attempt to execute a scheme or artifice to defraud a financial institution.
>
> To find the defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:
>
> *First:* the defendant knowingly executed a scheme or artifice to defraud Pulaski Bank to obtain money or property from Pulaski Bank by means of false or fraudulent pretenses, representations, or promises.
>
> *Second:* Pulaski Bank was a financial institution within the meaning of the law; in this case that means that the government must prove that Pulaski Bank was insured by the Federal Deposit Insurance Corporation.
>
> *Third:* the defendant acted with intent to defraud.
>
> *Fourth:* the false or fraudulent pretenses, representations, or promises that the defendant made were material, meaning they would naturally tend to influence, or were capable of influencing the decision of, Pulaski Bank.
>
> *Fifth:* the defendant placed Pulaski Bank at risk of civil liability or financial loss.
> A "scheme or artifice" to defraud includes any design, plan, pattern or course of action, including false and fraudulent pretenses and misrepresentations, intended to deceive others in order to obtain something of value, such as money, from the institution to be deceived.
>
> A defendant acts with the requisite "intent to defraud" if the defendant acted knowingly and with the specific intent or purpose to deceive, ordinarily for the purpose of causing some financial loss to another or bringing about some financial gain to the defendant.
>
> A statement or representation is "false" or "fraudulent" if it is known to be untrue or is made with reckless indifference to its truth or falsity.

Defendant claims there is insufficient evidence to prove the risk of loss and materiality elements. He further argues the aggravated identify theft conviction is predicated on the bank fraud charge and therefore he should be acquitted of both convictions. Defendant moved for judgment of acquittal at trial based on the same arguments presented in the current motion. The court denied that motion and submitted the case to the jury, who found evidence of guilt beyond a reasonable doubt on all elements including risk of loss and materiality. The court may only grant defendant's motion for acquittal if it finds there is no evidence to support these elements. For the reasons below, the court declines to do so.

**a. Risk of Loss**

Defendant argues there is insufficient evidence to prove Pulaski Bank was at risk of loss or civil liability due to the misrepresentations he made while applying for a mortgage. He claims the government's witnesses testified that because the bank caught the fraud early in the process, the bank was never at risk of actually dispersing loan funds to defendant and therefore was never at risk of loss or civil liability.

As mentioned above, a defendant is guilty of bank fraud if he "knowingly executes, or attempts to execute, a scheme or artifice -- to defraud a financial institution." 18 U.S.C. § 1344(1). Courts have noted the "scheme to defraud" requirement in the statute has not been precisely defined. *See Young*, 952 F.2d at 1256. To "defraud"—as defined by Black's dictionary—is "to cause injury or loss to (a person or organization) by deceit; to trick (a person or organization) in order to get money." DEFRAUD, Black's Law Dictionary (10th ed. 2014). The Tenth Circuit has therefore determined that in order to support a conviction under subsection 1 of 18 U.S.C. § 1344, the government must prove the bank was "put at potential risk by the scheme to defraud." *Young*, 952 F.2d at 1257. *See also United States v. Sapp*, 53 F.3d 1100, 1103 (10th Cir. 1995) (finding the government must prove a

defendant put a bank "at risk" under subsection 1 of 18 U.S.C. §1344 and not under subsection 2 because, "[c]lause (1) [of 18 U.S.C. §1344] . . . expressly requires that the scheme be one to 'defraud,' while clause (2) does not but rather extends to any knowingly false representation.").

Although the "risk of civil liability or financial loss" requirement is not found within the language of the statute, courts have found the "risk of loss" aspect is "subsumed within the first element of bank fraud under § 1334(1), 'that the defendant knowingly executed or attempted to execute a scheme or artifice to defraud a financial institution.'" *Swanson*, 360 F.3d at 1161. It is therefore necessary to demonstrate the bank suffered a potential risk of loss or civil liability in order to establish whether the defendant's scheme was intended to defraud the bank. *See Swanson*, 360 F.3d at 1165 ("Moreover, requiring the jury to find that Mr. Swanson 'deceive[d] or cheate[d] [the] financial institution to obtain something of value, such as money, from the financial institution,' [citation omitted], necessarily implies a finding of risk of loss.").

Importantly, however, in proving the risk of loss element, the government does not have to show the bank actually suffered any monetary loss. *Young*, 952 F.2d at 1257 (citing *United States v. Lemons*, 941 F.2d 309, 316 (5th Cir. 1991) ("by distributing customer funds to an unauthorized party, banks are put at risk")); *see also United States v. Ventura*, 17 F. Supp. 2d 1204, 1208–09 (D. Kan. 1998), *aff'd*, 172 F.3d 880 (10th Cir. 1999) (finding that in order to prove defendant committed a scheme to defraud, the government must establish defendant engaged in course of conduct designed to deceive the bank into releasing property with intent to victimize the bank by exposing it to an actual or *potential loss*) (emphasis added.) And while banks are "in the business of assuming risks," § 1344(1) specifically prohibits "exposing a bank to a risk of loss that the bank did not knowingly assume." *Id.* at 1208.

Here, defendant does not deny that he misrepresented his identity during the mortgage application process but argues the testimony of the government's own witnesses showed the bank was never at a risk of loss because of those misrepresentations. Defendant points to the bank employees' testimony that because they caught the fraudulent activity early in the application process, the bank was never actually at risk of dispersing loan funds.

Bank employees did testify that the bank began investigating defendant's loan application early in the process after defendant's father—who defendant named on the application—received documents from the bank and called to notify them he had not applied for a loan. Bank employees, however, also testified that they continued to process the loan while the investigation was ongoing because it was still unclear who had actually applied for the loan. Even after the bank was on notice of potential fraudulent activity, defendant continued to supply documentation—including a falsified pay stub—and expressed his intent to proceed with the loan.

Defendant's submission of a fraudulent mortgage application along with his subsequent conduct expressing intent to proceed with the loan was a fraudulent scheme that put the bank at potential risk of loss. Defendant was under contract to purchase a house worth nearly a half a million dollars. He knew he did not have good credit but that his father, a veteran, had good credit and would qualify for a VA-backed loan. He applied for a mortgage using his father's identify and misled bank employees into believing he was a purple heart veteran so that he might secure a loan of more than $400,000. When bank employees asked for further documentation, defendant promised to provide it, and, in fact, submitted a falsified pay stub. Although the bank was on notice of potential fraud, it continued to process the loan as normal until defendant eventually admitted to investigators that he had used his father's identity without his consent. Simply because the bank did its due diligence in identifying and investigating potential fraud does not excuse defendant's conduct. The government

only had to prove the bank was at a potential risk of loss, and at the moment defendant committed the criminal act, the bank was exposed to a potential risk of loaning defendant more than $400,000. The jury found beyond a reasonable doubt that the defendant's scheme to defraud the bank put the bank at a risk of loss, and the court declines to overturn that verdict.

**b. Materiality**

Defendant argues the government failed to meet its burden to prove the misrepresentations he made—the initial mortgage application and the falsified pay stub—were material. He claims that because no decision-making entity at the bank ever received the mortgage application, and a fraud investigation had been initiated before defendant submitted the falsified pay stub, the fraudulent documents could not have influenced the bank's decision to grant him a loan.

The United States Supreme Court has held that "materiality of falsehood is an element of the federal mail fraud, wire fraud, and bank fraud statutes." *Neder v. United States*, 527 U.S. 1, 25 (1999); *see also United States v. Camick*, 796 F.3d 1206, 1218 (10th Cir. 2015) (stating that materiality means "the false statement 'has a natural tendency to influence, or is capable of influencing, the decision of the decisionmaking body to which it was addressed.'"). As such, the jury in this case was instructed that the government must prove beyond a reasonable doubt that "the false or fraudulent pretenses, representations, or promises that the defendant made were material, meaning they would naturally tend to influence, or were capable of influencing the decision of, Pulaski Bank."

Materiality is a question of fact for the jury to decide, thus, the jury must determine "at least two subsidiary questions of purely historical fact: (a) 'what statement was made?' and (b) 'what decision was the [decisionmaking body] trying to make?'" *Id.* at 1214-15. Once the jury has answered these questions, it must then decide whether "the relevant statement could influence the relevant decision." *Id.* at 1215.

In *Camick*, the defendant was charged with various crimes including one count of wire fraud and one count of material false statement for using his deceased brother's identity on a provisional patent application. *Id.* at 1213, 1217. The defendant appealed his convictions arguing the use of his brother's name on the application was immaterial. *Id.* at 1218. The Tenth Circuit noted that the Patent and Trademark Office (PTO) defined a provisional patent application as a "'quick[] and inexpensive[]' filing" that acts as a placeholder to secure the applicant's priority over other inventors. *Id.* The information in a provisional patent application would only become relevant if an applicant took additional action on the application within one year of filing. *Id.* at 1219. If no action was taken within that year, the provisional application would be deemed abandoned. *Id.* at 1218. The Tenth Circuit held that the false statements defendant made on the provisional patent application were incapable of influencing a PTO decision because the defendant failed to take the additional steps to convert the provisional application into a nonprovisional one. The court therefore reversed the defendant's wire fraud and material false statement convictions.

In the present case, defendant argues that similar to *Camick*, the misrepresentations he made on the mortgage application were immaterial because the application never made it past the initial stage in the process. Defendant points to testimony from bank employees that the bank's underwriters were the ultimate decisionmakers when it came to mortgage applications. Defendant claims that, like in *Camick*, his mortgage application was provisional in nature because the bank required additional documentation before the underwriters would see the application. He argues that the misrepresentations he made were immaterial because the bank caught the fraud before the application made it to the underwriters.

Defendant also directs this court to *United States v. Finn*, 375 F.3d 1033 (10th Cir. 2004), in which a federal employee was convicted of knowingly making a false document after he altered a

receipt attached to an expenditure form. The Tenth Circuit held the altered receipt and false expenditure form were not material because the government did not present sufficient evidence to show a jury could determine what decision, if any, a decisionmaking body was trying to make in connection with the case expenditure form at issue. *Id.* at 1040.

Here, defendant argues the *Finn* reversal illustrates that materiality cannot be inferred from the fact a false statement was merely conveyed to a decisionmaking body, and instead the government must show beyond a reasonable doubt: (1) there is a decision to which the false statement is relevant and (2) that the statement could have been used by a decisionmaker for the purpose of making the relevant decision.

When deciding whether defendant's misrepresentation was material, the court must identify (1) what statement was made and (2) what decision the decisionmaking body was trying to make. The court must then determine whether the government established that the relevant statement could influence the relevant decision. Defendant's misrepresentations came in the form of the mortgage application in his father's name and the falsified paystub. The decision to be made by the decisionmaker—here Pulaski Bank—was whether to grant defendant's application for a VA-backed loan of more than $400,000. The government presented sufficient evidence that defendant's misrepresentations influenced the bank's relevant decision. The moment defendant submitted the fraudulent mortgage application, Pulaski Bank employees began processing the application. The bank verified that the applicant was a veteran and a purple heart recipient and ran a credit check. The bank requested further documentation for the file, and defendant supplied a falsified pay stub. Although the bank was on notice of the potential fraud, it continued working with defendant to complete the application file. The process was only terminated once defendant admitted to investigators he had misrepresented his identity on the mortgage application.

The court is unpersuaded by defendant's attempts at analogizing his case to *Camick* and *Finn*. The mortgage application is distinguishable from the provisional patent application in *Camick*. Unlike the provisional patent application, Pulaski Bank immediately used the information provided in the mortgage application to begin processing the application. The mortgage application was not "provisional" simply because it never made it to the final decisionmaking body. Further, unlike *Finn*, there was sufficient evidence to connect defendant's misrepresentations to a relevant decision. Defendant fraudulently applied for a mortgage because he was under contract to buy a home. Pulaski Bank began taking steps to process that application so that it could decide whether defendant should be approved for a loan and for how much. The jury found the defendant's misrepresentations were material and the court declines to set aside its verdict.

**c. Aggravated Identity Theft**

Defendant was also convicted of one count aggravated identity theft under 18 U.S.C. § 1028A(a)(1), which states: "Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment for such felony, be sentenced to a term of imprisonment of 2 years." Defendant argues that he should be acquitted of the underlying felony listed in the statute and therefore should be acquitted of aggravated identity theft. The court declines to set aside the jury verdict on the bank fraud conviction and therefore the aggravated identify theft conviction also stands.

**IT IS THEREFORE ORDERED** that defendant Matthew Williams's Motion for Judgment of Acquittal (Doc. 41) is denied.

Dated June 16, 2016, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**